# Political Activities of Civil Service Employes

JEROME H. GERBER, Deputy Attorney General, and ANNE X. ALPERN, Attorney General, September 13, 1960. — You have requested my opinion concerning employes placed under civil service status by virtue of the Executive Board Resolution of September 10, 1956, and the contract executed by you with the Civil Service Commission in pursuance thereof. You specifically inquire whether such employes who have engaged in political activity must be dismissed.

The Civil Service Act is designed to include in its coverage positions existing in certain State agencies. The insurance department is not one of those agencies designated by section 3, subsec. (c) of the Civil Service Act as originally enacted in 1941. However, section 212 of that act provides that the services and facilities of the commission may be made available to other departments upon such terms and conditions as are prescribed by the rules of the commission.

The Executive Board Resolution and its amendments directed all executive departments to contract with the Civil Service Commission for the administra-

tion of certain enumerated classes of positions. The resolution provided that no incumbent of such positions, or any person subsequently appointed thereto, would be given permanent tenure without having passed a qualifying examination. Pursuant to the Executive Board Resolution, you entered into a contract with the Civil Service Commission for the administration of the designated classes. The contract provided that the services of the commission would be available to, and accepted by, your department in the performance of all the necessary duties for the administration and maintenance of classification plans, recruitment, the conduct of examinations, preparation of eligible lists and certifications therefrom, training, the maintenance of necessary records and appeals from demotion, furlough, retirement, resignation or removal. This contract went on to provide:

"It is further agreed that in the extension of services and facilities of the State Civil Service Commission, the Civil Service Act, the Act of August 5, 1941, P. L. 752, as amended, and the Rules of the State Civil Service Commission will apply in all matters of personnel administration not specifically mentioned above, with the following exceptions: (a) Recruitment of persons outside the Commonwealth of Pennsylvania will be permissible in these professional and technical positions where recruitment difficulties are known to exist; (b) Where, in the opinion of the appointing authority, scholastic education is a requirement commensurate with the duties and responsibilities of these technical and professional positions, such scholastic education will be stated in the public announcement and will be a requirement for admittance to the tests; (c) The Insurance Commissioner may make appointments at salaries above the minimum of the pay range as set forth in the official Compensation Plan of the Commonwealth in order to attract qualified personnel

in technical and professional classes if, in the opinion of the Commissioner and the State Civil Service Commission, such action is in the best interests of the Commonwealth."

It would appear from the above language that the provisions of the Civil Service Act were incorporated into and became an operative part of the contract, except as specifically excluded therefrom.

Section 904 of that act as amended, 71 PS §741.904, prohibits persons in the classified service from engaging in certain designated types of political activity as follows:

"No person in the classified service shall be a member of or delegate or alternate to any political convention, nor shall he participate at any such convention, except in the performance of his official duty or as a visitor, nor shall he serve as a member of any committee of any political party, or take an active part in political management or in political campaigns, or use his office or position to influence political movements or to influence the political action of any officer or employe in the service of the Commonwealth, nor shall he circulate or seek signatures to any nominations or other petition required by any primary or election law, nor shall he seek or accept election, nomination or appointment as an officer of a political club or organization, or serve as a member of a committee of any such club or organization, nor shall he in any manner participate in or interfere with the conduct of any election or the preparation therefor at the polling place or with the election officers while counting the votes or returning the election material to the place provided by law for that purpose, save only for the purpose of making and depositing his own ballot as speedily as it reasonably can be done, nor shall he be within the polling place or within fifty feet thereof, except for the purpose of carrying out official duties

and of ordinary travel or residence during the period of time beginning with one hour preceding the opening of the polls for holding such election and ending with the time when the election officers shall have finished counting the votes and have left the polling place for the purpose of depositing the election material in the place provided by law for that purpose, excepting only police officers who may temporarily approach or enter the polling place in order to make any arrest permitted by law or for the purpose of preserving order and in each case remain only long enough to accomplish the duties aforesaid after which the said officers shall at once withdraw: Provided, however. That the rights of any individual as a citizen are not impaired hereby, and the prerogative to attend meetings, to hear or see any candidate or nominee or, to express one's individual opinion, shall remain inviolate."

Section 906 of the act provides that:

"Any person holding a position in the service of the Commonwealth who violates any of the provisions of this act or of the rules made thereunder shall be immediately separated from the service. It shall be the duty of the appointing authority of the State agency in which the offending person is employed to remove him at once in accordance with the provisions of this act . . ."

You inform us that the employes in your department under the coverage of the Executive Board Resolution have not, as yet, been given qualifying examinations and, therefore, have not, as yet, acquired permanent civil service tenure. In spite of this, they are, nevertheless, within the political prohibition ban of section 904. Significantly, section 904 starts with the language "no person in the classified service." Had the legislature intended to exclude nonpermanent employes from this section, it could easily have done so.

Where the Civil Service Act contemplates different treatment for nonpermanent employes, it expressly spells out this difference. Thus, section 807 of the Civil Service Act applies". . . to all persons in the classified service, except provisional, temporary and emergency employes, or probationary employes . . ." No such exclusion was made with respect to the political activities ban under section 904.

There is no provision for discretionary action. Sections 904 and 906 of the act are clear and mandatory under the express language of the act. Therefore, any employe of your department whose position is covered by the Executive Board Resolution of September 10, 1956, and its amendments, who has engaged in political activity prohibited by section 904 of the Civil Service Act must be dismissed.

You have called our attention to the fact that the Civil Service Commission, in dealing with employes who were extended civil service coverage by virtue of the Executive Board Resolutions, has adopted a policy of granting the employes an election to resign from either the political activity or the civil service position. We are unable to find any legal basis for the policy adopted by the commission.

We have carefully examined the records of the statutory civil service agencies to determine whether there was any extensive pattern of administrative conduct in substantial variation with the express prohibition of the Civil Service Act. In response to our request to the various statutory civil service agencies to furnish us with all files relating to cases wherein political activity has been charged against employes, we have received reports and files on only 12 such incidents where dismissals were considered. It is reasonable to believe that there were other cases, but no records were apparently maintained.

Significantly, in only one of these cases was the employe actually dismissed. This case which arose in the Department of Health in 1953, involved an employe who was engaged in partisan political activity. Upon receipt of an opinion from the acting assistant general counsel of the United States Civil Service Commission that the activity constituted a violation of the Hatch Act, the employe was notified of the violation and was dismissed.

Nine of the cases furnished to us arose in the Liquor Control Board:

1. 1950: The employe was elected to the office of committeeman of a political party. He apparently took no active part in the campaign which resulted in his election, but did sign a petition permitting his name to be placed upon the ballot. Upon being confronted with the allegation, the employe resigned from the office of committeeman and was permitted to remain in the employ of the board.

2. 1950: The employe had been elected a committeeman. Upon his resignation from that office no disciplinary action was taken against the employe.

3. 1951: An employe was a candidate for the office of city treasurer. This employe had not circulated any petitions nor taken an active part in the campaign. He was permitted to remain in the employ of the Board.

4. 1953: The employe held the office of court crier and inspector of elections. The assistant attorney general advised that the holding of the office of inspector of elections constituted a violation of the Civil Service Act. The employe resigned from this position and was retained by the board.

5. 1955: The employe had filed his petition for election to the office of committeeman. He had circulated petitions for other candidates and served as a watcher at the polls. This employe had been previously warned

about similar political activity. The assistant attorney general advised that the employe's conduct constituted a violation of the Civil Service Act requiring dismissal. The board did not proceed against the employe on this ground but dismissed him for other causes.

6. 1958: The employe was actively engaged in political activity. She was warned and instructed to discontinue such activity. The assistant attorney general advised that her conduct constituted a violation of the Civil Service Act and that she should be dismissed. The employe was given a letter of reprimand and ordered to discontinue her political activity. She is still employed by the board.

7. 1958: The employe served as judge of elections. The assistant attorney general advised that the employe had violated the Civil Service Act and should be dismissed. Earlier this employe had been reprimanded for political activity, but had been told that if he took no further part in politics he would be retained by the board. After the second infraction the employe was notified he would be dismissed, but the dismissal was made on grounds other than political activity.

8. 1958: The employe was elected to the office of borough councilman. There was no indication of political activity on the part of the employe relating to his election. The assistant attorney general advised that the mere holding of office did not constitute violation of the Civil Service Act. The board took no action against the employe.

9. 1958: The employe served as an official at a polling place. The assistant attorney general advised that this constituted a violation of the Civil Service Act requiring immediate dismissal. The board took no action against the employe.

Two of the cases furnished the Department of Justice arose in the Department of Public Assistance, now Department of Public Welfare:

1. 1944: The employe circulated a political petition. She was given a warning and retained in the service of the Commonwealth.

2. 1955: The employe became a candidate for public office and subsequently was employed by the Department. Immediately upon being advised of political prohibition in the Civil Service Act the employe withdrew from the election and was retained in the service of the Commonwealth.

It is noteworthy that whenever legal advice was sought on the subject, the Department of Justice, through its representative, in all cases where prohibited political activity was found, recommended immediate dismissal of the offending employe. This advice was not always followed.